IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| SEAMUS THOMAS CULLETON, | § |
| | § |
| Petitioner, | § |
| | § |
| v. | §  CAUSE NO. EP-25-CV-554-KC |
| | § |
| DE ANDA-YBARRA et al., | § |
| | § |
| Respondents. | § |

# ORDER

On this day, the Court considered Seamus Thomas Culleton's Amended Petition for a Writ of Habeas Corpus, ECF No. 4. For the following reasons, the Court **ORDERS** that the Petition is **DENIED**.

## I.  BACKGROUND

Culleton is an Irish citizen who lawfully entered the United States in 2009 as a Waiver Tourist under the Visa Waiver Program ("VWP"). Am. Pet. ¶ 4. In September 2025, Immigration and Customs Enforcement ("ICE") arrested Culleton after local police ran a license plate check on his vehicle outside a Home Depot in Massachusetts. *Id.* ¶ 13. ICE transported Culleton to a detention facility in Buffalo, New York, and from there to the ERO El Paso Camp East Montana facility in El Paso, Texas, where he remains detained. *Id.* ¶¶ 11, 13.

Culleton is married to a U.S. Citizen and has filed a Form I-130 Petition for Alien Relative based on their marriage. *Id.* ¶ 12. Culleton was scheduled to appear before United States Customs and Immigration Services ("USCIS") for his marriage based green card interview, which has now been rescheduled numerous times due to his detention. *Id.* ¶¶ 12, 18; Dec. 16, 2025, Advisory 2–3, ECF No. 10.

On October 6, 2025, Culleton requested a bond hearing, and an immigration judge ordered that he be released on a $4,000 bond. Am. Pet. ¶ 15. Culleton's wife promptly posted the bond, "which was accepted and approved by ICE." *Id.* ¶ 16. However, DHS filed a motion to reconsider, and upon reconsideration, the immigration judge denied bond because it "lacked jurisdiction" to grant bond to VWP entrants under a longstanding Board of Immigration Appeals ("BIA") decision. *Id.* ¶ 17 (citing *Matter of A.W.*, 25 I&N Dec. 45 (BIA 2009)). On November 14, 2025, ICE served Culleton with an Order of Removal on the grounds that he violated the terms of the VWP. *Id.* ¶ 1; Resp. Ex. A ("Final Admin. Removal Order") 3, ECF No. 6-1.

On November 17, 2025, Culleton filed an Amended Petition for a Writ of Habeas Corpus, asking the Court to order his release, or alternatively, order a bond hearing before an immigration judge. Am. Pet. 27. The Court ordered Respondents to show cause why Culleton's Petition should not be granted. Nov. 17, 2025, Order 5, ECF No. 5. Respondents filed their Response, ECF No. 6, arguing that Culleton is subject to a final order of removal under the VWP and thus is not entitled to release or a bond hearing before an immigration judge, and that Culleton's due process claim under *Zadvydas* is premature. Resp. 4–10. Culleton then filed a Reply, ECF No. 8.

In an Affidavit attached to his Reply, Culleton claimed that he was not served with any notices until November 14, 2025, and that he did not sign any documents while in custody. Reply Ex. G ("Culleton Aff.") ¶ 5, ECF No. 8-1. Because the finality of Culleton's removal order depended on whether Culleton was properly given notice of removal and an opportunity to seek asylum, the Court ordered Culleton to clarify whether he claimed he never signed any DHS document at all or that he did not sign until November 14, 2025. Dec. 12, 2025, Order 2, ECF No. 9.

The key document at issue was a Notice of Intent to Issue a Final Administrative Order ("Notice"), ECF No. 6-1, which purported to show Culleton's handwritten signature, dated September 11, 2025, and his statement that he only wished to contest his removability because "I'm married to a citizen and have a work permit."  Notice 2.  The Notice was signed by Deportation Officer ("DO") Secore, dated September 11, 2025, and purported to confirm that the Notice was served to Culleton in English on that day.  *Id.*  DO McDonald also signed the form, dated September 23, 2025, confirming that Culleton "contested the allegations" after being given an opportunity to do so.  *Id.*

Culleton claimed that he never signed the Notice.  Dec. 16, 2025, Advisory.  Thus, the Court held a hearing on January 16 and 17, 2026, where Culleton and DOs Secore and McDonald testified.  Jan. 16, 2026, Minute Entry, ECF No. 22; Jan. 17, 2026, Minute Entry, ECF No. 26.

At the hearing, Culleton testified that ICE detained him on September 9, 2025, in Massachusetts, then transferred him to the Batavia detention facility in Buffalo, New York, on September 11.  *See generally*, Jan. 16, 2026, Minute Entry.  Once at Batavia, Culleton was fingerprinted with ink and paper.  He believes his picture was taken about one day after he was fingerprinted.  Culleton testified that he remained in the processing area at Batavia for about four days.  During that time, other people were being served with various notices, but he was not.  Eventually, around September 15, Culleton was moved to a different housing unit, which was essentially a large gym.  Culleton testified he was unable to sleep during this time because of the conditions of his detention, and that his memory of the events was "a little hazy."  Culleton was subsequently transferred to the ERO El Paso Camp East Montana detention facility.  Culleton

claims it was not until then, on November 14, that ICE served him with any notices, and that he refused to sign any documents. Particularly, Culleton testified that he did not sign the Notice nor did he write "I'm married to a citizen and have a work permit" on it. Culleton also testified that he did contest the allegations of his deportability based on his marriage to a U.S. citizen, but that he only did so verbally. Lastly, Culleton testified that he did not wish to seek asylum.

DO Secore testified that he remembered Culleton because it was unusual for him to come across an Irish detainee, Culleton was an exceptionally tall person, and it was the first time he processed a VWP removal. *See generally* Jan. 17, 2026, Minute Entry. Secore testified that he remembered serving the Notice on Culleton, but not watching Culleton sign it. Although he did not remember the specifics, Secore testified that he usually presents the Notice to the individual and asks for a signature. Secore testified that if an individual does not want to sign the document, he writes "refused to sign" on the document, and that this would be satisfactory notice. Secore testified that he did not forge Culleton's signature on the document. And he testified that he would have no reason to do so because he could simply note that Culleton refused to sign and achieve the same legal effect. Secore testified he remembered allowing Culleton to review the Notice. When asked if he signed the Notice after Culleton signed it, Secore stated that he could not remember, because sometimes he signs the Notice before the detained individual signs it, and other times he signs it afterwards. Lastly, Secore testified that Culleton refused to sign the Final Administrative Removal Order, thus, the signature line stated, "refused to sign."

Secore also testified that the paperwork was riddled with mistaken dates because of the way ICE's computer system operates.[1] This led to the Notice, which should be issued and

---

[1] According to Secore, their system automatically populates the date that the case is opened to all fields requiring a date.

4

presented before a Final Administrative Removal Order, being dated September 11. Yet, the actual Final Administrative Removal Order, was dated September 10. Then, the Notice to Alien Ordered Removed/Departure Verification, which should only be issued and signed after an individual has received their final removal order and is in the active process of being removed, was also dated September 10, and signed by Secore. The Record of Deportable/Inadmissible Alien, which Secore signed, also had two dates, September 10 and September 11. Secore testified the correct date should have been September 11. This same form also stated that Culleton had been served with Form I-200—a warrant for removal—but Secore testified he was not sure if this document was served. Secore testified that he should have caught those errors when processing the paperwork, but that he "missed" them.

DO McDonald testified that he did not have any specific recollection of Culleton due to the large numbers of people he sees daily. *See generally* Jan. 17 Minute Entry. But he acknowledged that he signed the Notice, confirming that Culleton had been served the Notice and wished to contest his removal. McDonald testified he did not forge any signature.

## II.     DISCUSSION

"The VWP 'permits alien visitors to enter the United States from designated countries for a period not exceeding 90 days without obtaining a nonimmigrant visa.'" *Lavery v. Barr*, 943 F.3d 272, 273 (5th Cir. 2019) (citing *Nose v. Att'y Gen. of U.S.*, 993 F.2d 75, 77 (5th Cir. 1993)). The VWP statute mandates that beneficiaries of the program waive "any right . . . to contest, other than on the basis of an application for asylum, any action for removal of the alien." 8 U.S.C. § 1187(b)(2). "This waiver is the linchpin of the program; it allows VWP participants to enter the country expeditiously while streamlining their removal." *Lavery*, 943 F.3d at 273.

Thus, individuals that entered the country under VWP are removable "without referral of the alien to an immigration judge for a determination of deportability." *See* 8 C.F.R. § 217.4(b)(1).

The Fifth Circuit has held that the VWP statute "'unambiguously' limits an alien's means of contesting removal solely to an application for asylum." *McCarthy v. Mukasey*, 555 F.3d 459, 460 (5th Cir. 2009) (citation omitted). And once an individual violates the terms of the VWP by remaining in the United States for more than ninety days, the individual is no longer entitled to contest removal on any other basis. *Id.* at 462. This is true even when an individual has a pending adjustment of status application on the basis of their marriage to a U.S. citizen. *Id.* at 460, 462.

Culleton concedes he is removable under the VWP. Reply 10. But he argues that because USCIS accepted and began processing his adjustment of status application, he is entitled to due process protections in its fair adjudication. *Id.* at 9. The Fifth Circuit has foreclosed this very argument, reasoning that the VWP waiver includes a waiver of due process rights. *See Mukasey*, 555 F.3d at 462. And "[t]he fact that [Culleton] applied for an adjustment of status before the DHS issued its notice of removal is of no consequence." *Id.*

However, because Culleton claimed he did not sign the Notice, it was unclear whether he was given a proper opportunity to seek asylum, and whether the order of removal was final. *See AMM v. Thompson*, No. 5:25-cv-1210-FB, 2025 WL 3296315, at *2–3 (W.D. Tex. Nov. 26, 2025). Thus, the Court held a hearing to resolve this factual dispute. Dec. 17, 2025, Order.

The Court finds that Culleton did sign the Notice, for several reasons. First, although Culleton testified credibly, he stated that he had not slept in a few days, and explained that he was having memory issues around the time he purportedly signed the Notice. Second, Culleton claimed he was not served with any documents until November 14, but the Record of

6

Deportable/Inadmissible Alien contained his fingerprints, which he explained were taken with ink and placed on the paper.  Third, Culleton eventually testified that he did, in fact, remember seeing the document, though, to be sure, he continued to maintain that he did not sign it.  Fourth, Secore testified credibly and explained how it was that he served the Notice to Culleton.  Importantly, Secore testified that Culleton's signature was not required, because Secore could note if Culleton refused to sign.  There was simply no reason for Secore, or any other officer, to forge Culleton's signature.  Fifth, the Notice stated that Culleton challenged his removability on the basis of his marriage to a U.S. citizen, which tracks Culleton's allegations and testimony regarding the basis on which he challenges his detention and deportability.  Finally, Respondents also provided copies of Culleton's passport, other forms that he submitted to USCIS, and copies of checks, which Culleton acknowledged he signed—and, while the Court is not a handwriting expert, these signatures are undoubtedly similar to the alleged forgery.  Thus, after careful consideration of the testimony and evidence, the Court finds that Culleton did in fact sign the Notice.

Moreover, Culleton is only entitled to challenge his removability if he seeks asylum.  Culleton testified that he does not wish to seek asylum.  Thus, he has been given every opportunity he is entitled to as a VWP entrant.  *See Lavery*, 943 F.3d at 273.  Therefore, Culleton is subject to a final administrative order of removal.  That makes this case different from the many recent cases in which noncitizens have successfully challenged their immigration detention without a bond hearing in the pre-final removal order context.  *See, e.g.*, *Lopez-Arevelo v. Ripa*, 801 F. Supp. 3d 668 (W.D. Tex. 2025).  In the post-removal order context, noncitizens may ordinarily only challenge their detention if they are released and arbitrarily re-detained, or if their detention becomes unreasonably prolonged.  *See Zadvydas v. Davis*, 533 U.S. 678, 689–90

(2001); *Nguyen v. Bondi*, No. 3:25-cv-323-KC, 2025 WL 3120516, at *4 (W.D. Tex. Nov. 7, 2025). Nothing in the record suggests that either of these grounds apply to Culleton's case. Nor does the Court have reason to believe that his removal to Ireland will not be promptly effectuated. But if it is not, and his detention becomes unreasonably prolonged, he may bring a claim under *Zadvydas* at that time.

Finally, the Court admonishes Respondents for the procedural irregularities permeating this matter. Most notably, Culleton was initially identified as a VWP overstay, subject to prompt removal with no right to a bond hearing. *See* Record of Deportable/Inadmissible Alien 1. Yet, at some point, Respondents confused Culleton as having entered under a non-immigrant visa, and provided him with a bond hearing, at which bond was granted. *See* Pet. Ex. H ("IJ Order"). This necessitated Respondents to file a motion for reconsideration, in which they correctly reasserted that Culleton was actually subject to removal under the VWP. *See* Pet. Ex. I ("DHS Mot. Reconsider"). These mistakes muddy the record and undermine faith in the system. Undoubtedly, they also caused agony for Culleton and his wife, who thought for a moment that he would be released on bond and thus permitted to adjust his status. Nonetheless, for reasons discussed above, this Court is without authority to provide Culleton with any relief.

### III.  CONCLUSION

For the foregoing reasons, Culleton's Amended Petition, ECF No. 4, is **DENIED**.

**IT IS FURTHER ORDERED** that this Court's Order preventing Respondents from transferring Culleton out of the El Paso Division of the Western District of Texas and removing him from the United States is **VACATED**.

**IT IS FURTHER ORDERED** that all pending motions are **DENIED** as **MOOT**.

**The Clerk shall close the case**.  In the event that Culleton's post-removal order detention becomes prolonged beyond six months, he may move to reopen this case and assert a *Zadvydas* claim.

**SO ORDERED**.

**SIGNED this 23rd day of January, 2026.**

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE